UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alpharetta Lifehope Land SPE, LLC | ) | Case No. 22−59897−pwb |
| | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| Revere Tactical Opportunities REIT, LLC, | ) | |
| | ) | |
| Movant, | ) | CONTESTED MATTER |
| | ) | |
| v. | ) | |
| | ) | |
| Alpharetta Lifehope Land SPE, LLC | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that Revere Tactical Opportunities REIT, LLC has filed a **Motion to Lift Stay Under 11 U.S.C. §362(d)(1) or to Dismiss under 11 U.S.C. §1112(B) or under 11 U.S.C. § 1112(b)(4)(A) and Memorandum of Law in Support thereof** and related papers with the Court seeking an order lifting the automatic stay as to collateral securing the indebtedness of the Debtor to Revere Tactical Opportunities REIT, LLC ("Creditor") or dismissing this bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the **Motion to Lift Stay Under 11 U.S.C. §362(d)(1) or to Dismiss under 11 U.S.C. §1112(B) or under 11 U.S.C. § 1112(b)(4)(A)** at the following number: **toll-free number: 833-568-8864; meeting ID: 161 794 3084** , at **10:00 a.m**. on **March 16, 2023** in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.

_____

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

**Your rights may be affected by the court's ruling on these pleadings**. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date.  Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Date: February 25, 2023                Respectfully Submitted,

_____
Lisa F. Harper
Taylor, Feil, Harper & Lumsden, P.C.
3400 Peachtree Rd. NE
Suite 1515
Atlanta, Georgia 30326
Tel.: 404-214-1219
Email: lfharper@tfhlegal.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alpharetta Lifehope Land SPE, LLC | ) | Case No. 22−59897−pwb |
| | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| Revere Tactical Opportunities REIT, LLC, | ) | |
| | ) | |
| Movant, | ) | CONTESTED MATTER |
| | ) | |
| v. | ) | |
| | ) | |
| Alpharetta Lifehope Land SPE, LLC | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

## MOTION TO LIFT STAY UNDER 11 U.S.C. §362(d)(1) OR TO DISMISS UNDER 11 U.S.C. §1112(b)  OR UNDER  11 U.S.C. § 1112(b)(4)(A) AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW Revere Tactical Opportunities REIT, LLC (hereinafter sometimes referred to as the  "Movant," "Creditor," or "Lender")  and hereby moves this Court for an Order lifting the automatic stay as to collateral securing the indebtedness of Alpharetta Lifehope Land SPE, LLC (the "Debtor" or "Borrower") to Lender or  dismissing this bankruptcy case, and shows the Court as follows:

## I.    JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 & 1409. This motion for relief from the automatic stay is a core proceeding. See 28 U.S.C. § 157(b)(2)(A) & (G).

## II.   BACKGROUND

### A.    The Loan

Under that certain Absolute Assignment of Note and Liens by and between Revere Tactical Opportunities TRS, LLC as assignor and Revere Tactical Opportunities REIT, LLC as assignee dated June 18, 2021 and recorded on February 14, 2022 in Deed Book 65269, Page 239, Fulton Records, Revere Tactical Opportunities REIT, LLC became the holder of the following loan documents, among other documents evidencing the Loan (hereinafter, collectively referred to as the "Loan Documents"):

>       (1)  That certain Term Loan in the amount of $9,350,000 (the "Loan") under that certain Term Note dated May 20, 2021, executed by Borrower and payable to the order of Lender in the original principal amount of $9,350,000 (the "Note");

>       (2)  That certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by Borrower as of May 20, 2021 in favor of Lender, and recorded in the Official Records of Fulton County, Georgia ("Fulton County Records") in Deed Book 63814, Page 388 (the "Security Deed");

2

(3) That certain Term Loan and Security Agreement (the "<u>Loan Agreement</u>"),

dated as of May 20, 2021 executed by Borrower and Lender; and

(4) That certain Guaranty Agreement executed by Scott Honan (the "Guarantor")

in favor of Lender dated as of May 20, 2021 (the "Guaranty").

(the Absolute Assignment, the Note, the Security Deed, the Loan Agreement, the Guaranty, and all

other documents evidencing the Loan hereinafter, collectively, the "<u>Loan Documents</u>").

Declaration of Travis Behl ("Behl Dec."),  submitted simultaneously herewith, at ¶7  and Exhibits A

through E, attached thereto.

**B.**    **<u>Default</u>**

(1)   Defaults occurred under the Loan as a result of an Escrow and a Tax Default,

as defined in a letter notifying Borrower and Guarantor of the same dated March 1, 2022.

Behl Dec. at ¶8 and Exhibit F attached thereto.

(2)   The Tax Default remained unpaid and further defaults occurred thereafter

by reason of nonpayment of interest due on April 1, 2022. Behl Dec. at ¶ 9.

(3)    As a result of those defaults, the Lender declared all amounts owed under

the Loan immediately due and payable and gave notice of the acceleration of the

indebtedness to Borrower and Guarantor in a letter dated April 21, 2022. Behl Dec. at

¶10 and Exhibit G attached thereto.

(4)   A further default occurred on May 1, 2022 by reason of the failure of the

Borrower to pay interest due on May 1, 2022 (said May 1, 2022 default along with the

defaults defined above collectively herein referred to as the "<u>Defaults</u>"). Behl Dec. at

¶11.

3

(5)   The Loan matured on May 20, 2022 (the "Maturity Date") and all amounts due thereunder were past due and payable to the Lender for that reason also which amounts remain unpaid to date (the "Maturity Default"). Behl Dec. at ¶12.

(6)   The amount due under the Loan through February 24, 2023 totals: $11,177,559.16, which continues to accrue at the rate of $4,889.59 per day, and which is exclusive of attorneys' fees and costs. Behl Dec. at ¶7(5).

**C.      Lender's Attempts to Exercise Remedies and Grants of Forbearances**

(1) As a result of the Defaults and Maturity Default, the Lender advertised the property serving as its collateral under the Security Deed (the "Property") for foreclosure on June 7, 2022. Behl Dec. at ¶13.

(2) The Property is vacant land and has no operations thereon. Behl Dec. at ¶14.

(3)  A Forbearance Agreement effective June 6, 2022 was entered into by and between Lender and Borrower and Guarantor pursuant to which, among other things, the Lender agreed to postpone foreclosure until the next foreclosure date, July 5, 2022,  based upon Borrower's representations of its ability to refinance the Property and payoff the Loan before that date. Behl Dec. at ¶15 and Exhibit H attached thereto.

(4) The  Lender advertised the Property under the Security Deed for foreclosure on July 5, 2022 to be prepared to foreclose in the event that the Borrower and Guarantor failed to pay off the Loan as required under the Forbearance Agreement. Behl Dec. at ¶16.

(5) The Borrower failed to refinance the Property and pay off the Loan as required under the Forbearance Agreement, and the Lender moved forward on its plan to foreclose on July 5, 2022. Behl Dec. at ¶17.

4

(6)    Based up on the Borrower's and the Guarantor's repeated representations that it could refinance the Property and that such a refinance was imminent,  the Borrower and Guarantor and Lender agreed to the Second Forbearance Agreement on July 1, 2022, pursuant to which, among other things, the Lender agreed to postpone the July 5, 2022 foreclosure until the next foreclosure date of August 2, 2022 to allow time for the repeated promised refinance of the Property and payoff of the Loan before that date.  Behl Dec. at ¶18 and Exhibit I attached thereto.

(7)    The Lender advertised the Property under the Security Deed for foreclosure on August 2, 2022 to be prepared to foreclose in the event that the Borrower and Guarantor failed to pay off the Loan as required under the Second Forbearance Agreement. Behl Dec. at ¶19 .

(8)    The Borrower once again failed to refinance the Property and pay off the Loan as required under the Second Forbearance Agreement, the forbearance terminated under its own terms,  and the Lender was moving forward on its plan to foreclose on August 2, 2022. Behl Dec. at ¶20.

(9)    On July 29, 2022, however, the Borrower and Guarantor and Lender agreed to the Third Forbearance Agreement, pursuant to which, among other things, the Lender agreed to postpone the foreclosure until the next foreclosure date of September 6, 2022 to allow time for the yet again promised refinance and payoff of the Loan.  Behl Dec. at ¶21 and Exhibit J attached thereto.

(10) The Lender advertised the Property for foreclosure on September 6, 2022 to be prepared to foreclose in the event that the Borrower and Guarantor failed to pay off the Loan as required under the Third Forbearance Agreement. Behl Dec. at ¶22.

(11)  The Borrower failed to refinance the Property or payoff the Loan as required under the Third  Forbearance Agreement  and the Lender was moving forward on its plan to foreclose on September 6, 2022. Behl Dec. at ¶23.

(12) On September 2,  2022, however, the Borrower and Guarantor and Lender agreed to the Fourth Forbearance Agreement, pursuant to which, among other things, the Lender agreed to forbear yet again in consideration of: (i) a payment of Two Hundred Thousand and No/100 Dollars ($200,000.00) on the amount due under the Loan, a payment of a $25,000 forbearance fee, and payment of the then current Lender attorney's fees; plus (2) the agreement of the Borrower and the Guarantor to provide additional collateral to support the Loan by executing guarantees and security deeds in favor of the Lender for properties known as the Mann Properties (as more fully described in the Fourth Amendment) on or by September 9, 2022.  Behl Dec. at ¶24 and Exhibit K attached thereto.

(13) Further under the Fourth Forbearance Agreement,  the parties agreed that the Borrower and Guarantor would  attempt to refinance the Mann Properties such that  the amount   of Three Million Two Hundred Fifteen Thousand and 00/100 Dollars ($3,215,000.00) would be available and would be paid down on the Loan so as to further induce the Lender thereafter to forbear for another  six (6) month period; during which six month period, the Borrower and Guarantor promised again that they would pay off the Loan. Behl Dec. at ¶25 and Exhibit K attached thereto.

6

(14) As a result of the Fourth Forbearance Agreement, the Lender postponed the September 6, 2022 foreclosure.  Behl Dec. at ¶ 26.

(15) Thereafter, on September 8, 2022, Debtor and Guarantor provided the Operating Agreement of the entities owning the Mann Properties, which, among other things, demonstrated that the Guarantor was the manager and authorized signer for each of the entities owning the Mann Properties; on September 21, 2023, the Debtor and Guarantor provided drafts of the security documents to the Lender; and as of October 12, 2022, the security documents for the Mann properties were finalized but for execution. Behl Dec. at ¶27.

(16) Based upon the continued representations by the Borrower and Guarantor that a closing was imminent on the refinance of the Mann Properties (and promises to provide the already late executed documents evidencing the Lender's security interest in the Mann Properties at said closing), the Lender prepared the Fifth Forbearance Agreement and provided it to the Borrower and the Guarantor on October 14, 2022. Behl Dec. at ¶28 and Exhibit  attached thereto.

(17)  The Borrower and the Guarantor failed to meet their obligations under the Fourth  Forbearance Agreement, including but not limited to failing to execute and deliver the documents necessary to provide the Mann Properties as additional collateral under the Loan; and then failing to refinance the additional collateral and pay down the Loan so as to gain another six (6) month forbearance period from the Lender.  Thus,  the forbearance terminated under its own terms on October 17, 2022. Behl Dec. at ¶29.

7

(18)  Although it had no obligation to do so, the Lender gave the Borrower and Guarantor notice of their default under the Fourth Forbearance Agreement in a letter dated November 1, 2022. Behl Dec. at ¶30 and Exhibit M attached thereto.

(19) Based upon repeated and continuing representations that a refinance of the Mann Properties was imminent, the Lender continued to forbear from further exercise of it rights,  although it had no obligation to do so. Behl Dec. at ¶31.

(20) In light of the continued failure of the Borrower and the Guarantor to follow through on any of the repeated representations regarding  a refinance of the Property and payoff of the Loan or regarding  the refinance of the Mann Properties so as to pay down the Loan and gain another six month forbearance,  the Lender then submitted an ad for a foreclosure to be held on December 6, 2022. Behl Dec. at ¶32.

(21)  While the December 6, 2022 foreclosure ad was running, the Borrower and Guarantor continued to make representations to the Lender regarding the impending refinance of the Mann Properties and the intent of Borrower and Guarantor to pay down the Loan, as was contemplated under  the Fourth Forbearance.  No agreement to further forbear was agreed upon by the Lender, however, given the history of repeated broken promises. Behl Dec. at ¶33.

(22)  The Fifth Forbearance Agreement was never executed as Borrower and Guarantor failed to refinance the Mann Properties and pay down the Loan so as to be entitled to any further forbearance. Behl Dec. at ¶34.

(23)  The Borrower and Guarantor having failed to meet the requisites of any of the forbearance agreements  and the Lender having agreed to forbear under four (4) different

8

forbearance agreements and having forborne from exercise of its rights for a period of over seven (7) months, the Lender moved forward to foreclose on December 6, 2022. Behl Dec. at ¶35.

**D.    The Bankruptcy**

(1)    As a result of the December 6, 2022 scheduled foreclosure, the Borrower filed its Petition for Relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy") on December 5, 2022 to stop the foreclosure.

(2)    This Bankruptcy is a single asset real estate case as stated in the Debtor's Petition.

(3)    There are very few creditors, with there being two secured creditors, and the only unsecured creditors identified being governmental and/or taxing authorities.

(4)    The primary creditor is the Lender, with the indebtedness identified in the Debtor's schedules as $10,448,939.53, while another secured creditor is listed as Serlyn Properties II, LLC with the indebtedness identified in the Debtor's schedules as $1,271,508.26.

(5)    The indebtedness to Serlyn Properties II, LLC appears to be the result of the assignment of the Debtor's indebtedness to Honan Preferred Equity, LLC to Serlyn Properties II, LLC pursuant to that certain Absolute Assignment and Modification of Security Deed and Related loan Documents (the "Assignment") recorded on June 8, 2021 in Deed Book 63915, Page 228 in the records of the Superior Court of Fulton County, Georgia.[1]

---

[1] As reflected in the Assignment and according to the records of the Secretary of State of Georgia, the Guarantor is the Manager of Honan Preferred Equity, LLC, and upon information and belief, is the sole or an owner of the same.

9

E.    <u>**The Other Bankruptcy Proceedings**</u>

(1)    At no time during the seven (7) month forbearance period did the Borrower or Guarantor inform the Lender of any possible or actual bankruptcy filings of entities with which the Guarantor was involved or that were related to contiguous properties.

(2)    Yet, according to filings in the United States Bankruptcy Court for the Northern District of Georgia, the Guarantor is a co-debtor/guarantor for the primary loans against the properties at issue in at least two other pending bankruptcy proceedings, *i.e.*, 3333 Alpharetta Lifehope 10 Acre Land, LLC, Case No. 22-57594-lrc and 11680 ROYAL RIDGE MOB1 SPE, LLC, Case No. 22-57946-pmb (the "Other Bankruptcies").

(3)    The Lender learned about the existence of the Other Bankruptcies as a result of the reference to them in the Application to Employ Attorneys recently filed by the Debtor on January 3, 2023 [Dkt. 13].

(4)    The bankruptcy of 3333 Alpharetta Lifehope 10 Acre Land, LLC was filed on September 23, 2022; and the bankruptcy of 11680 ROYAL RIDGE MOB1 SPE, LLC was filed on October 9, 2022.

(5)    Thus,  while the Fourth Forbearance Agreement was pending and the Borrower and Guarantor were supposed to be refinancing the Mann Properties; while after the expiration of the Fourth Forbearance Agreement, the Borrower and Guarantor continued to represent that a refinance of the Mann Properties was imminent so as to be able to pay down the Loan to try to induce the Lender to continue to forbear;  the Other Bankruptcies had already been filed.

### III.      ARGUMENT AND CITATION OF AUTHORITY

The automatic stay should be lifted in this case as to the rights of the Lender in the Property or this case should be dismissed under  11 U.S.C. §362(d)(1), 11 U.S.C. §1212(b)(1),  and/or  11 U.S.C. §1112(b)(4)(A).

### A.  The Automatic Stay Should be Lifted or this Case Dismissed for Bad Faith

A lift of the automatic stay under 11 U.S.C. §362(d(1) is  appropriate upon a finding by a court of bad faith by a debtor.  As stated in *In re Phoenix Piccadilly, Ltd*., 849 F.2d 1393, 1394 (11th Cir. 1988), "[a]n automatic stay may be terminated for 'cause' pursuant to section 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith." *Id..,*  (citing *Natural Land Corp. v. Baker Farms, Inc.,* 825 F.2d 296 (11th Cir.1987)).  Similarly, a bankruptcy court may dismiss a bankruptcy proceeding under 11 U.S.C. §1212(b)(1) as a result of bad faith.   As held in  *In re Sterling Bluff Invs., LLC*, 515 B.R. 902, 915 (Bankr. S.D. Ga. 2014), "lack of good faith in filing a Chapter 11 petition may also constitute cause for dismissal."  *Id*. (citing *In re Pegasus Wireless Corp. v. Tsao (In re Pegasus Wireless Corp.),* 391 Fed.Appx. 802, 803 (11th Cir.2010); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir.1984)).

As the Eleventh Circuit Court of Appeals held  in  *In re Phoenix Piccadilly, Ltd*., 849 F.2d  at 1394–95 and as was later reiterated and held to continue to apply to single asset real estate cases in *In re State St. Houses, Inc*., 356 F.3d 1345, 1347 (11th Cir. 2004), the non-exhaustive list of factors to be considered in determining whether a bankruptcy has been filed in bad faith, include:

(i)      The Debtor has only one asset, the Property, in which it does not hold legal title;

(ii)      The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

11

(iii)    The Debtor has few employees;

(iv)    The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v)  The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*In re State St. Houses, Inc*., 849 F.2d at 1394–95 (cits. omitted).  Courts have further held

that the fact that "possible equity in the property or a potential for a successful reorganization

does not preclude a finding of a bad faith filing." *In re Sterling Bluff Invs., LLC*, 515 B.R. at

915 *(citing Canpartners Realty,* 419 B.R. at 86 (citing *Phoenix Piccadilly, Ltd. v. Life Ins.*

*Co. of Va. (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393, 1395 (11th Cir.1988)).

The  facts  and  circumstances  of  the  instant  case  fall  squarely  under  the  factors

enumerated by the courts for evidence of bad faith.   That is:

1.    The Debtor has only one asset as this is a single asset real estate case.

2.    The Debtor has no unsecured creditors other than a few taxing authorities or

governmental entities, and only two of those show any money owed in the Debtor's

schedules.

3.    The Debtor has no employees and is not conducting any ongoing business

and has no revenue.

4.    The Property is subject to foreclosure because of the unpaid arrearages of the

debt and unpaid amount due after maturity.

12

5.     The Debtor's issues in the bankruptcy are essentially issues between the Lender and the Debtor that would have been resolved if the foreclosure had gone forward.

6.     The Debtor filed on the eve of the December 6, 2022  planned foreclosure, after having received four prior forbearances over a period of seven months with repeated unfilled promises by the Debtor.  Thus, the timing of the filing evidences an intent of the Debtor to frustrate the legitimate efforts of the Lender.

As stated by the court in *Matter of Little Creek Dev. Co*.,

> Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. ***The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court.***

*Matter of Little Creek Dev. Co*., 779 F.2d 1068, 1072–73 (5th Cir. 1986)(emphasis supplied).

This is exactly the situation present in this instant case.

The facts and circumstances of the instant case are also on point with those on which the Court in  *In re Vallambrosa Holdings, L.L.C.,* found bad faith on the part of the Debtor based on the following:

> First, Debtor **has only one asset**, the Vallambrosa property.

> Second, ***the claims of the unsecured creditors are greatly exceeded by the secured claims***. Based on the claims register, there are $31,297,650.00 in secured claims compared to $2,181919.32 non priority unsecured claims and $172,551.64 in priority

13

unsecured claims.1 See In re State St. Houses, Inc., 305 B.R. 726, 735–36 (Bankr.S.D.Fla.2002)(found this factor weighs in favor of a finding a lack of good faith because the secured claims were $14,400,000 and the unsecured claims were $3,000,000), aff'd, 305 B.R. 738 (S.D.Fla.2003), aff'd, 356 F.3d 1345 (11th Cir.2004).

Third, **Debtor has no employees and is not currently conducting any ongoing business**. To the extent that Debtor argues that it works through independent contractors, these contractors are not solely dependent on Debtor for their livelihood. As a result, this factor weighs in favor of a finding of a lack of good faith. See *Humble Place Joint Venture v. Fory* (*In re Humble Place Joint Venture*), 936 F.2d 814, 817 (5th Cir.1991).

Fourth, **since the ongoing litigation between Debtor and Canpartners relates to this single asset and since Debtor faces no imminent threat from any of its other creditors, there is compelling evidence that this Chapter 11 filing is a mere two-party dispute relating to real property with Canpartners, as the secured lender, trying to foreclose, and Debtor seeking to avoid foreclosure**. See *In re State Street Houses, Inc.,* 305 B.R. at 736.

Fifth, **Debtor's case was filed on the eve of foreclosure**. Even though it is true that Debtor was negotiating a settlement with Canpartners up to the day of foreclosure, Jewitt W. Tucker, Jr., ("Tucker"), owner of the Debtor, admitted that his motive for filing was to stall Canpartners foreclosure in an attempt to extend those negotiations. At the time of the petition, the loan was past its maturity date, Debtor had not performed the prerequisites to obtain an extension on the maturity date, **and Debtor had tried but not succeeded in obtaining any financing to pay Canpartners' loan in full**. See *Phoenix Piccadilly*, 849 F.2d at 1395 (found this factor weighs in favor of a finding of bad faith because the debtor's agent admitted its purpose of filing the petition was to delay the secured creditors foreclosure action).

*In re Vallambrosa Holdings, L.L.C.,* 419 B.R. 81, 85–86 (Bankr. S.D. Ga.), adhered to on

denial of reconsideration, 419 B.R. 92 (Bankr. S.D. Ga. 2009)(emphasis supplied).

Based on the foregoing, the Lender respectfully submits that the stay should be lifted

as to its rights in the Property or this case dismissed under 11 U.S.C. §1212(b)(1) or   11

U.S.C. §362(d).

14

**B.** **The Automatic Stay Should be Lifted or this Case Dismissed as There is Not a Reasonable Likelihood of Rehabilitation**

A Chapter 11 proceeding may be dismissed or converted to a Chapter 7 liquidation under 11 U.S.C. § 1112(b)(4)(A) upon proof of both: (1) a substantial or continuing loss to or diminution of the bankruptcy estate; and (2) the absence of a reasonable likelihood of rehabilitation. "To satisfy the first prong, a movant may demonstrate `that the debtor continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief' or that the debtor's assets have declined in value since the case was commenced." *In re Creekside Sr. Apartments, L.P.,* 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013)(cits omitted).

"To satisfy the second prong of § 1112(b)(4)(A), a movant must demonstrate that the debtor does not have a reasonable likelihood of rehabilitation." *In re Creekside Sr. Apartments, L.P.*, 489 B.R. at 6 .   In that regard and as noted in *In re Brutsche*,

> Significantly, the second part of the test under section 1112(b)(4)(A) requires a reasonable likelihood of "rehabilitation", not "reorganization". Thus, the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. ***Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation***.

*In re Brutsche*, 476 B.R. 298, 301–02 (Bankr. D.N.M. 2012)(cits. omitted)(emphasis supplied). *See also*, *In re Intown Companies, Inc*., No. 14-50374-KKS, 2017 WL 3491831, at *9 (Bankr. N.D. Fla. Apr. 14, 2017).

In the instant case, there is negative cash flow, given that there is no ongoing business or revenue,  and yet there are expenses, including but not limited to insurance

15

and taxes.  Moreover, the value of the Debtor's only asset, vacant land, is at risk and upon information and belief is likely declining as time passes.

In addition, there is no reasonable likelihood of rehabilitation in the instant case. Given that the single asset in this case is vacant land, any plan or reorganization will undoubtedly involve either obtaining financing of some kind or a liquidation.  As noted above, a liquidation plan will demonstrate that the Chapter 11 proceeding should be dismissed or converted.

Further,  any plan by the Debtor involving further financing also has no reasonable likelihood of rehabilitation.  This has been demonstrated in the seven (7) months prior to the Chapter 11 filing during which the Debtor repeatedly failed to be able to refinance the Property and during which the Lender repeatedly forbore from the exercise of its rights to allow the Debtor the opportunity to refinance.

As noted in *In re Invs. Fla. Aggressive Growth Fund, Ltd*.,

Plans which extensively rely on sale or refinance of real property that constitutes a debtor's primary or sole significant asset, and where that asset has been a marginal performer to date, are inherently speculative and invite close judicial scrutiny of the assumptions underlying the plan.

* * *

While a proponent need not demonstrate the success of the plan with absolute certainty, more than simple optimism about future market conditions is needed to support the confirmation of a plan whose success depends on a future sale or refinance of the debtor's principal asset.

*In re Invs. Fla. Aggressive Growth Fund, Ltd.,* 168 B.R. 760, 766 (Bankr. N.D. Fla. 1994).

In light of the foregoing, the Lender respectfully submits that the Chapter 11 proceeding should be dismissed under 11 U.S.C. § 1112(b)(4)(A).

16

**IV. CONCLUSION**

As a result of the foregoing, the Lender respectfully submits that under 11 U.S.C. § 362(d)(1), 11

U.S.C. §1212(b)(1),  and/or  11 U.S.C. §1112(b)(4)(A),  the automatic stay should be lifted as to the

Lender's rights in the Property or this Chapter 11 case should dismissed.


Respectfully Submitted,


_____

Lisa F. Harper
Taylor, Feil, Harper & Lumsden, P.C.
3400 Peachtree Rd. NE
Suite 1515
Atlanta, Georgia 30326
Tel.: 404-214-1219
Email: lfharper@tfhlegal.com

17

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Alpharetta Lifehope Land SPE, LLC | ) | Case No. 22−59897−pwb |
| | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| Revere Tactical Opportunities REIT, LLC, | ) | |
| | ) | |
| Movant, | ) | CONTESTED MATTER |
| | ) | |
| v. | ) | |
| | ) | |
| Alpharetta Lifehope Land SPE, LLC | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2023, I electronically filed the Motion to Lift Stay under 11 U.S.C. §362(d)(1) or to  Dismiss under 11 U.S.C. §1112(B) or under  11 U.S.C. § 1112(b)(4)(A) and Memorandum of Law in Support thereof  and the Notice of Hearing on the same using the CM/ECF system, and notice thereof was sent to:

Elizabeth Ann Childers, Esq.
William A. Rountree, Esq.
Rountree Leitman, Klein & Geer, LLC
Century Plaza I, Suite 350
2987 Clairmont Rd.
Atlanta, GA 30329
echilders@rlkglaw.com
wrountree@rlkglaw.com
Attorneys for Debtor

Nathaniel DeLoatch, Esq.
David A. Wender, Esq.
Eversheds Sutherland (US) LLP
Suite 2300
999 Peachtree St. NE
Atlanta, GA 30309
nathanieldeloatch@eversheds-sutherland.us
davidwender@eversheds-sutherland.com
Attorney for Serlyn Properties II, LLC

I further hereby certify that on February 25, 2023, I caused a copy of the Motion to Lift Stay under 11 U.S.C. §362(d)(1) or to  Dismiss under 11 U.S.C. §1112(B) or under  11 U.S.C. § 1112(b)(4)(A) and Memorandum of Law in Support thereof  and the Notice of Hearing on the same to be mailed, postage prepaid as follows:

Alpharetta Lifehope Land SPE, LLC
11680 Great Oaks Way
Suite 120
Alpharetta, GA 30022
(Debtor)

City of Alpharetta
Alpharetta City Hall
2 Park Plaza
Alpharetta, GA 30009

Fulton County Tax Commissioner
141 Pryor Street SW Ste 1085
Atlanta, GA 30303

Georgia Department of Revenue
Compliance Division, ARCS - Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA 30345

Internal Revenue Service
CIO
P.O. Box 7346
Philadelphia, PA 19101-7346

U. S. Securities and Exchange Commission
Suite 900
950 East Paces Ferry Road, NE
Atlanta, GA 30326-1382

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

United States Attorney
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta GA 30303-3309

_____
    Lisa F. Harper
    Taylor, Feil, Harper & Lumsden, P.C.
    3400 Peachtree Rd. NE, Suite 1515
    Atlanta, Georgia 3026
    Tel.: 404-214-1219;
    Email: lfharper@tfhlegal.com

3